DEBORAH M. SMITH
Acting United States Attorney

STEPHEN COOPER
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, AK 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
E-mail: stephen.cooper@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 4:05-cr-037-TWH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **PLAINTIFF'S SENTENCING** |
| ) | **STATEMENT** |
| TRAVIS B. BULLOCK, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| _____ ) | |

Plaintiff, the United States of America, offers the following sentencing

statement.

United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), requires that although the Sentencing Guidelines are advisory, not mandatory, the district courts "must consult those Guidelines and take them into account when sentencing." Id., 125 S.Ct. at 767.

The Presentence Report (PSR) correctly computes the offense level, beginning with base offense level 6, plus 2 for a commercial purpose, plus 6 for value of the wildlife exceeding $30,000 measured by the value of the hunts in the three grouped counts, for a total of 14, less 2 for acceptance of responsibility, resulting in a level 12 (PSR ¶¶ 65-76). Plaintiff does not dispute the determination, PSR ¶ 70, that obstruction of justice does not apply, on the present facts.

Plaintiff does not anticipate offering any evidence at the sentencing hearing, unless in response to issues that may arise at or before that time.

1.  Factual Considerations Relevant to Sentencing

The case involves an experienced big game guide, licensed as an assistant guide in Alaska, who contracted with three out-of-state hunters for a sheep hunt.

Under Alaska law, itemized below, only a registered guide, not an assistant guide, may enter into guiding contracts with clients. Further violations occurred when defendant conducted the hunt without the presence and supervision of a registered guide. Eugene Witt, the registered guide who was represented in the required hunt records as the registered guide for these hunts with defendant as his assistant, PSR ¶ 32, was never present in the field or present with the hunting party at any time during the hunt, and neither he nor defendant ever planned that he would be. PSR ¶ 29, 44. It was defendant's agreement with Witt that resulted in preparation of these falsified hunt records showing Witt to be the registered guide and defendant as his assistant guide on the hunt. Defendant paid Witt just over one-third of the $30,000 fee he received from the hunters for nothing more than Witt's agreeing to be listed on the forms as the registered guide, to give the appearance of compliance with the law. Defendant's splitting so large a portion of the fee with Witt tends to show that defendant understood both the existence and the importance of the state law requirements, that only a registered guide might enter into the contract for this hunt and that defendant must be employed by the registered guide and supervised by him in the field. It cannot reasonably be assumed that defendant as a licensed assistant guide under Alaska law was unaware of these requirements.

Once in the field, defendant became responsible for yet additional violations.

Two of the three sheep taken in defendant's presence and with his assistance were of sub-legal size, one rather obviously so and another less obviously but still below a full curl. One purpose for requiring nonresidents to utilize a guide for sheep hunting is apparently to avoid just such violations as these. That was defendant's responsibility, as the only licensed Alaskan guide present. His qualifications as a guide would indicate that he must have been aware that these animals were sub-legal before he approved taking them. The only one of his two packers who gave a statement, Rogers, had never hunted Dall sheep and had not hunted in Alaska before. PSR ¶ 59. Defendant was the only possible source for the false information on Krueger's and Dandy's harvest reports claiming that those two sheep were legal because they were eight years old. PSR ¶¶ 36, 37.

Further, defendant and his two packers, not the hunters, handled the downed animals. None of the rib meat was salvaged on the three sheep, and not all the neck meat was salvaged. Defendant's packer Rogers claims the rib meat was bloodshot. PSR ¶ 58. Some of it may have been, though there is now no objective evidence of that. But that seems unlikely to have been true of the entirety of the rib meat.

Defendant, as a guide, was required to report violations, and he failed to do so. Later he asked at least one and probably both of his packers not to provide to investigators any information about the hunt. PSR ¶¶ 53, 59, 70.

Thus, it was illegal under the Lacey Act, as charged, for defendant to engage in the interstate sale, i.e., the guiding contract, and for him to provide paid guiding and outfitting services, for the taking and interstate transportation of these sheep because in doing so he participated in committing the following predicate violations of state law:

(1) AS 16.30.010 and Chapter 5 Alaska Administrative Code 92.220(d) – Failing to salvage for human consumption all edible meat as defined in 5 AAC 92.990(17), which includes the meat of the neck and ribs.

(2) AS 16.30.012 – Possessing the horns of a big game animal without possessing all the edible meat.

(3) 5 AAC 92.220(e) – Transporting horns from the kill site before all edible meat has been transported to the point of departure from the field.

(4) 5AAC 85.055(a)(10) – Nonresident hunter harvesting a sheep with less than full curl horns, defined in 5AAC 92.990(a)(19) as a sheep with at least one horn which has grown through a 360° circle, or both horns are broken, or the sheep is at least 8 years old as aged by horn annuli rings.

(5) 5AAC 92.140(a) – Possessing, transporting, giving or receiving game or parts of game that the person knows or should know were taken in violation of state law.

(6) AS 08.54.720(a)(1) – A guide failing promptly to report to Public Safety any violation of a state game, guiding or transportation statute or regulation committed by a client or employee.

(7) AS 08.54.720(a)(3), 08.54.630(b)(3) – An assistant guide knowingly guiding a hunt while not employed and supervised by a registered guide who is present in the field and participating in the contracted hunt.

(8) AS 08.54.720(a)(8) – A guide committing or aiding or permitting a violation of a state game statute or regulation without attempting to prevent it and without reporting it.

(9) AS 08.54.720(a)(14) – An assistant guide contracting to guide or outfit a hunt.

(10) AS 08.54.720(a)(15) – A guide violating a state statute or regulation prohibiting waste of game.

These predicate violations underlie the following Lacey Act violations:

(1) 16 U.S.C. 3372(a)(2)(A) and (c)(1) – Selling wildlife in interstate commerce, by providing commercial guiding or outfitting services through an interstate transaction for the illegal taking and interstate transportation of wildlife.

(2) 16 U.S.C. 3372(a)(2)(A) – Transporting, or attempting or aiding and

abetting the transportation, in interstate commerce of wildlife taken, possessed, transported, or sold in violation of any state game law.

(3)  16 U.S.C. 3372(d) – Complicity in making any false record, such as hunt records showing Eugene Witt to be the guide for these hunts, and harvest reports showing the sub-legal sheep to be legal by reason of age, for any wildlife which is intended to be transported across state lines.

2.  The Parties' Agreed Terms

The parties have agreed to settle upon one charge for each of the sheep, as set forth in the Information. Sentencing is open for recommendations of the parties and for determination by the Court, with three stipulated provisions, however:

1) a fine of $35,000,

2) no hunting or guiding or being with anyone who is hunting or guiding in Alaska for a period of three years as a condition of probation or supervised release; and

3) reporting to U. S. Fish and Wildlife Service on its standard forms during and as a condition of the same three year period of probation or supervised release the

details of any hunts at any location, which defendant guides or from which he is to receive compensation.

3.  Implementing the Agreed Terms

As the PSR correctly observes, each misdemeanor only permits a supervised release term of one year. This is statutory. 18 U.S.C. § 3583(b)(3). The PSR also observes that under the Sentencing Guidelines probation is not authorized for a sentence of imprisonment of more than six months, but that restriction is not statutory. U.S.S.G. § 5B1.1 provides that probation is "authorized" only if the guideline sentence is in Zone A or B, i.e., in a range of 6-12 months or less. This guideline limitation would preclude probation under the minimum guideline sentence of ten months here, because that sentence is greater than six months.

However, the statute, 18 U.S.C. § 3561, provides that a defendant convicted of an offense "may be sentenced to a term of probation" with certain exceptions not applicable here. It expressly authorizes a probationary term of not more than five years for any misdemeanor, without reference to what the term or range of imprisonment may be. § 3561(c)(2).

Thus, probation is authorized by statute in this case regardless of the length of any prison sentence. The Guidelines are advisory and must be taken into account in the Court's determination of what sentence is warranted. No strong underlying guideline policy has been identified which would run contrary to imposing probation here even if an imprisonment term of greater than six months were to be imposed.

The parties have not agreed on whether any term of imprisonment is warranted or how long it should be. But they have agreed on other provisions, specifically including a three-year term of either probation or supervised release, on conditions of three years' no hunting in Alaska and three years' reporting of guiding activities elsewhere, as well as the $35,000 fine. These conditions and the application of a three-year term of supervision to monitor compliance are closely related to the underlying offense conduct. They are essential to the public interest and are fair, reasonable, and not unduly or unnecessarily burdensome on the defendant. They permit defendant to pursue his occupation for the three years everywhere but in Alaska, which was not his principal base of operations in any event, and they require him to report his guiding activities. The three-year term of supervision, on these conditions, should therefore be ordered as authorized by statute, 18 U.S.C. § 3561(c)(2), without regard to the length of whatever term of imprisonment may be imposed.

The agreed $35,000 fine is well within the statutory maximum of $100,000 for each count, although it exceeds the guideline range of $3,000 to $30,000. It reflects the commercialization of these offenses, the considerable number of underlying violations that are merged into the three agreed charges, the total value involved, and the appropriateness of converting the resulting income to a loss, for the edification of any who may contemplate a similar enterprise.

Therefore, plaintiff respectfully recommends that sentence be entered accordingly, considering the foregoing matters in light of the sentencing factors stated in 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED this 3rd day of March, 2006, at Fairbanks, Alaska.

TIMOTHY M. BURGESS
United States Attorney

/s/ Stephen Cooper
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
E-mail: stephen.cooper@usdoj.gov
AK #6911028
